**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

DATASEERS INCORPORATED,

Plaintiff,

v.

SUTTON BANK AND GOIDENTIFY, LLC,

Defendants.

Case No.: 1:25-cv-06261-MLB

**DEFENDANT GOIDENTIFY, LLC'S MOTION TO DISMISS DATASEERS INC.'S COMPLAINT**

# TABLE OF CONTENTS

Table of Contents ............................................................................................. i

Table of Authorities......................................................................................... iii

I. INTRODUCTION ...........................................................................................1

II. LEGAL STANDARDS.....................................................................................3

A. Personal Jurisdiction .......................................................................................3

B. Failure to state a claim .....................................................................................3

III. THE CASE SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION. ..............................................................................................4

A. DataSeers has not established that this Court has personal jurisdiction over iDENTIFY.............................................................................................4

1. Subsection (1): iDENTIFY does not transact business in Georgia. ..........5

2. Subsection (2): No tortious act occurred within Georgia..........................6

3. Subsection (3): iDENTIFY lacks a requisite link to Georgia. ..................7

4. Due Process: iDENTIFY lacks the "minimum contacts" necessary to satisfy due process. ....................................................................................8

IV. COUNTS II AND IV SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. ..........................................................................................11

A. GFBPA theory in Count II fails because the statute applies to the consumer market, not the commercial market. ...................................................13

B. Georgia Trade Secrets Act preempts Count II to the extent it relies on trade secret misappropriation............................................................................14

C. Counts II and IV do not sufficiently plead allegations that raise a right to relief. .............................................................................................................15

1. Opinion statement about quality of service is not actionable. ................17

2. Allegations on "information and belief" are not entitled to a presumption of truth. .....................................................................................................18

3. The statement(s) are not alleged to be false and do not provide notice of the basis for the claim. ....20

D. No damages are available for Count II under GUDTPA. ....21

V. COUNT I SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ....22

VI. CONCLUSION ....25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Angel Oak Mortg. Sols. LLC v. Mastronardi*,
593 F. Supp. 3d 1234 (N.D. Ga. 2022) ............................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................ 3, 4, 16, 25

*Bartholomew v. AGL Res., Inc.*,
361 F.3d 1333 (11th Cir. 2004) ........................................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................. 4, 18, 21

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
582 U.S. 255 (2017) .........................................................................................10

*Britt v. Durham*,
770 F. Supp. 3d 1390 (N.D. Ga. 2025) ............................................................16

*Brohm v. Nautic Partners, LLC*,
No. 1:18-cv-3995-AT, 2019 WL 12831727 (N.D. Ga. July 23, 2019) .................6

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .........................................................................................11

*Card Isle Corp. v. Farid*,
689 F. Supp. 3d 1273 (N.D. Ga. 2023) ............................................................23

*Catrett v. Landmark Dodge, Inc.*,
253 Ga. App. 639 (2002) ..................................................................................22

*Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*,
53 F.4th 368 (6th Cir. 2022) .............................................................................24

*Chancellor v. Gateway Lincoln-Mercury, Inc.*,
233 Ga. App. 38 (1998) ....................................................................................13

*Coloplast Corp. v. Am. Breast Care, L.P.*,
209 F. App'x 945 (11th Cir. 2006) ...................................................................17

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
593 F.3d 1249 (11th Cir. 2010) .................................................................. 3, 5, 6

*Dowdell v. Krystal Co.*,
291 Ga. App. 469 (2008) ...............................................................................22

*DynCorp Int'l v. AAR Airlift Grp., Inc.*,
664 F. App'x 844 (11th Cir. 2016) ...............................................................23

*Earthcam, Inc. v. Oxblue Corp.*,
No. 1:11-cv-02278-WSD, 2012 WL 12836518 (N.D. Ga. Mar. 26, 2012).........17

*Eason Publ'ns, Inc. v. NationsBank of Ga.*,
217 Ga. App. 726 (1995) ...............................................................................13

*Elder v. Cardoso*,
205 Ga. App. 144 (1992) ...............................................................................17

*Exceptional Mktg. Grp., Inc. v. Jones*,
749 F. Supp.2d 1352 (N.D. Ga. 2010).............................................................6

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021).........................................................................................9

*G&G TIC, LLC v. Alabama Controls, Inc.*,
324 F. App'x 795 (11th Cir. 2009) ...............................................................17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011).......................................................................................10

*GYN & Fertility Specialists, Inc. v. Saint Joseph's Hosp. of Atlanta, Inc.*,
2022 WL 22329423 (N.D. Ga. Nov. 18, 2022) ..............................................19

*Hampson v. Am. Mortg. Exch., Inc.*,
No. 1:10-cv-0430-JEC-RGV, 2011 WL 13318764 (N.D. Ga. Jan. 21, 2011) ....16

*Henriquez v. El Pais Q'Hubocali.com*,
500 F. App'x 824 (11th Cir. 2012) .................................................................8

*Hernandez Auto Painting & Body Works, Inc. v. State Farm Mut. Auto. Ins. Co.*,
No. 4:08-cv-00256, 2009 WL 2952066 (S.D. Ga. Sept. 14, 2009) .....................16

*Iler Grp., Inc. v. Discrete Wireless, Inc.*,
90 F. Supp. 3d 1329 (N.D. Ga. 2015)....................21

*Joseph v. Bd. of Regents of Univ. Sys. of Georgia*,
No. 1:20-cv-502-TCB, 2020 WL 6494202 (N.D. Ga. May 8, 2020)....................19

*Junior v. Graham*,
313 Ga. 420 (2022)....................22

*Larson v. Tandy Corp.*,
187 Ga. App. 893 (1988)....................13

*Mann v. Palmer,*
713 F.3d 1306 (11th Cir. 2013)....................18

*Metzler v. Love*,
207 Ga. App. 447 (1993)....................7

*Mitchell v. Litton Loan Servicing*,
No. 1:10-cv-3176-JEC-RGV, 2011 WL 13319002 (N.D. Ga. Mar. 3, 2011).....16

*Morton v. Suntrust Mortg., Inc.*,
No. 1:10-cv-2594-TWT-RGV, 2010 WL 5055822 (N.D. Ga. Nov. 5, 2010).....16

*nTier Training, LLC, v. Aragon*,
No. 2:24-cv-235-RWS, 2025 WL 3255030 (N.D. Ga. Mar. 12, 2025)....................9

*Osmose, Inc. v. Viance, LLC*,
612 F.3d 1298 (11th Cir. 2010).................... 17, 20, 21

*Price v. Howard*,
No. 1:22-CV-02056-SDG, 2023 WL 2767770 (N.D. Ga. Mar. 31, 2023)..........18

*Quashie v. Olympus Am., Inc.*,
315 F. Supp. 3d 1329 (N.D. Ga. 2018)....................3, 9

*REPAY Mgmt. Servs. LLC v. Loscavio*,
No. 1:24-CV-3927-SEG, 2025 WL 3268858 (N.D. Ga. Sept. 12, 2025)..... 18, 20

*RoadSync, Inc. v. Relay Payments, Inc.*,
No. 1:21-cv-3420-MLB, 2022 WL 4715656 (N.D. Ga. Sept. 30, 2022) 22, 23, 25

*Robbins v. Supermarket Equip. Sales, LLC*,
290 Ga. 462 (2012) .......... 14, 15

*Scott v. Experian Info. Sols., Inc.*,
No. 0:18-cv-60178-CMA, 2018 WL 3360754 (S.D. Fla. June 29, 2018) .......... 18

*Sculptchair, Inc. v. Century Arts, Ltd.*,
94 F.3d 623 (11th Cir. 1996) .......... 9

*Serveco N. Am., LLC v. Bramwell*,
No. 4:22-cv-140-MLB, 2023 WL 2583275 (N.D. Ga. Mar. 20, 2023) .......... 3, 8, 9

*Smith v. City of Sumiton*,
578 F. App'x 933 (11th Cir. 2014) .......... 16, 18

*Snow v. DirecTV, Inc.*,
450 F.3d 1314 (11th Cir. 2006) .......... 5, 7

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 10

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) .......... 12

<u>Statutes</u>

O.C.G.A. § 9-10-91 .......... 7, 12

O.C.G.A. § 10-1-372(a) .......... 25, 27

O.C.G.A. § 10-1-373 .......... 36, 37

O.C.G.A. § 10-1-392(a)(10) .......... 21

O.C.G.A. § 10-1-393(a) .......... 20

O.C.G.A. § 10-1-399 .......... 37

O.C.G.A. § 13-6-11 .......... 37

Defendant GOiDENTIFY, LLC. ("iDENTIFY") respectfully moves to dismiss the Complaint of Plaintiff DataSeers, Inc. ("DataSeers"). The Complaint should be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Additionally, Counts I, II, and IV should be dismissed as to iDENTIFY for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## I. INTRODUCTION

Plaintiff DataSeers filed this action on October 31, 2025 (Dkt. 1) and filed an amended complaint alleging federal and trade secret misappropriation and other claims under Georgia law on November 17 (Dkt. 7, the "Complaint").[1] At bottom, the Complaint alleges: Plaintiff is a Georgia company that provided its software to an Ohio bank under a February 2021 contract (Complaint ¶¶ 1–2, 10); the Ohio bank breached the contract by disclosing the Georgia company's trade secrets to an Oklahoma company (*id.* ¶¶ 3, 15, 30–33); the Oklahoma company and Ohio bank worked together to copy and use the Georgia company's trade secrets to develop similar software (*id.* ¶¶ 13–15); and the Oklahoma company has been telling (unidentified) third parties not to work with the Georgia company because its products "do not work" and the Oklahoma company "can provide [] better service" (*id.* ¶¶ 16, 26, 37).

[1] The original complaint included a claim for copyright infringement (Dkt. 1 ¶¶ 25–30), and the amended pleading merely dropped that claim. See Plaintiff's Response to Order to Show Cause, Dkt. 8.

The only nexus or link to Georgia asserted in the Complaint are Plaintiff's residency (*id.* ¶ 1) and two bare-bones allegations: (1) the Defendants (generally) "intentionally caused harm to Plaintiff in the State of Georgia," and (2) "a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District." *Id.* ¶¶ 5–6. In fact, Defendant iDENTIFY has *no* meaningful connection to the State of Georgia. As explained in the declaration of iDENTIFY's President, Lee Easton, attached as Exhibit A ("Easton Decl."), iDENTIFY has never provided goods or services to DataSeers or any other Georgia resident or company, and never paid or been paid by DataSeers or any Georgia customer. Easton Decl. ¶¶ 5, 6. The only connection iDENTIFY has to this forum is a single, remote employee who, after working remotely in another state for a few months, moved to Georgia in April 2025. *Id.* ¶ 4.

Perhaps hinted at by Plaintiff's threadbare pleading of jurisdictional facts, Defendant iDENTIFY's lack of connection to the state of Georgia requires dismissal for lack of personal jurisdiction under Georgia's long-arm statute and due process. But the pleading deficiencies are not limited to jurisdiction—the state law claims are likewise conclusory and unsupported by plausible allegations. Thus, Counts II and IV should also be dismissed.

## II. LEGAL STANDARDS

### A. Personal Jurisdiction

The Court is familiar with the framework to analyze personal jurisdiction over a nonresident defendant. *See, e.g.*, *Serveco N. Am., LLC v. Bramwell*, No. 4:22-cv-140-MLB, 2023 WL 2583275, at *2–5 (N.D. Ga. Mar. 20, 2023) (finding no personal jurisdiction); *Quashie v. Olympus Am., Inc.*, 315 F. Supp. 3d 1329, 1334–39 (N.D. Ga. 2018) (Brown, J.) (same). To determine whether exercise of personal jurisdiction is proper, the Court first asks whether it has jurisdiction under Georgia's long-arm statute; if so, then the Court determines whether the exercise of jurisdiction satisfies the Due Process Clause. *Serveco*, 2023 WL 2583275, at *2.

A plaintiff bears the initial burden to allege sufficient facts to make out a "prima facie case of jurisdiction." *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)). When a defendant challenges jurisdiction with evidence to support its position, that shifts the burden back to the plaintiff "to produce evidence supporting jurisdiction." *Diamond Crystal*, 593 F.3d 1249 at 1257. Then, if the plaintiff and defendant's evidence conflicts, the court construes all reasonable inferences in the plaintiff's favor. *Id.*

### B. Failure to state a claim

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires more than a "mere possibility of misconduct." *Id.* at 679. Plaintiff's well-pled allegations must "nudge[] [its] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (cleaned up).

## III. THE CASE SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

### A. DataSeers has not established that this Court has personal jurisdiction over iDENTIFY.

DataSeers has not met its burden to allege sufficient facts to make out a *prima facie* case of jurisdiction. Its allegations fail to satisfy Georgia's long-arm statute or demonstrate that exercising jurisdiction comports with due process. The Georgia long-arm statute provides, in pertinent part:

> A court of this state may exercise personal jurisdiction over any nonresident … as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state …; [or]
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state ….

O.C.G.A. § 9-10-91. This statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Diamond Crystal*, 593 F.3d at 1259. Here, DataSeers cannot satisfy any of these potential prongs.

*1. Subsection (1): iDENTIFY does not transact business in Georgia.*

First, the Complaint is devoid of *any* allegation that iDENTIFY "transacts any business" in Georgia. Without specific factual allegations that iDENTIFY purposefully carried out some act or consummated some transaction in Georgia, subsection (1) is facially inapplicable. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (finding "no basis to subject [Defendant] to personal jurisdiction" where "[Plaintiff] presents no factual allegations demonstrating" a necessary element of the relevant long-arm statute).

Second, the Easton declaration confirms that iDENTIFY does not transact business in Georgia. "Transacts any business [as recited in subsection (1)], requires that the nonresident defendant has purposefully done some act or consummated some transaction in Georgia." *Diamond Crystal*, 593 F.3d at 1264 (cleaned up). As established in the declaration of Lee Easton, iDENTIFY "does not have, and has never had any customers in Georgia," "has not derived any revenue from goods sold or services rendered in Georgia," and "does not direct advertising or marketing specifically toward Georgia residents." Easton Decl. ¶¶ 6–7. Therefore,

it cannot "fairly be said" that iDENTIFY "transacted" business in Georgia under subsection (1). *Diamond Crystal*, 593 F.3d at 1264.

*2. Subsection (2): No tortious act occurred within Georgia.*

Georgia courts have consistently held that for subsection (2) to apply, the tortious act or the plaintiff's injury—as opposed to mere economic consequences—must occur within Georgia. *See, e.g.*, *Exceptional Mktg. Grp., Inc. v. Jones*, 749 F. Supp.2d 1352, 1363 (N.D. Ga. 2010) (a tort occurs "where the actual injury or accident takes place, and not at the place of the economic consequences of that injury" (cleaned up)); *Brohm v. Nautic Partners, LLC*, No. 1:18-cv-3995-AT, 2019 WL 12831727, at *7 (N.D. Ga. July 23, 2019).

Here, the Complaint fails to allege that any misappropriation or misuse of trade secrets, or any of the alleged statements by iDENTIFY, occurred in Georgia. For example, the Complaint asserts that iDENTIFY received DataSeers's trade secrets from Defendant Sutton Bank—alleged to be an Ohio resident—and copied those trade secrets to develop a "similar product." Complaint ¶¶ 2, 13, 15, but it never alleges that iDENTIFY received any trade secrets or developed the new product *in Georgia*. Similarly, the Complaint claims that iDENTIFY communicated with "Plaintiff's clients and other financial institutions," Complaint ¶¶ 16, 26, 37, but it does not allege that iDENTIFY made these statements or solicited or acquired any clients *in Georgia*.

At most, the Complaint makes a conclusory allegation that both Defendants (generally, without differentiation) "intentionally caused harm" to DataSeers in Georgia, and "a substantial part of the events or omissions … occurred" here. Complaint ¶¶ 5–6. Without more, these "vague and conclusory allegations … are insufficient to establish a prima facie case of personal jurisdiction." *Snow*, 450 F.3d at 1318.

The Easton declaration confirms that to the extent iDENTIFY performed any development work or business activities alleged to be tortious, "such activities occurred exclusively outside of Georgia." Easton Decl. ¶ 5. While iDENTIFY does have one Data Analyst who resides in Georgia, that "employee has not performed any development work, and the clients he supports are not located in Georgia." *Id.* ¶ 4. Accordingly, subsection (2) does not apply. *See Metzler v. Love*, 207 Ga. App. 447, 448 (1993) ("While a single event may be sufficient to impose jurisdiction under certain circumstances, that event must be an act of the nonresident defendant *in the forum* having its impact within the territory of the forum.").

*3. Subsection (3): iDENTIFY lacks a requisite link to Georgia.*

Subsection (3) applies when an act outside of Georgia causes injury inside Georgia, but *only* if the defendant: (i) "regularly does or solicits business" in Georgia; (ii) engages in a "persistent course of conduct" within Georgia; or (iii) "derives substantial revenue" from goods used or services rendered in Georgia.

O.C.G.A. § 9-10-91(3). This prong "protects against jurisdiction arising solely from random, fortuitous, or attenuated contacts." *Serveco*, 2023 WL 2583275, at *2 (internal quotations omitted).

The Complaint does not allege that iDENTIFY engages in *any* regular business in Georgia or derives *any* revenue from the state. Nor could it, because iDENTIFY has virtually no connection to Georgia commerce—i.e., does not solicit business or derive substantial revenue from Georgia. It does not maintain any office or facilities in Georgia; it is not, and never has been, registered to do business in Georgia; and it does not have, and has never had, any customers in Georgia. Easton Decl. ¶¶ 3, 6. For the same reason, iDENTIFY does not engage in a "persistent course of conduct" in Georgia as it does not solicit business or run targeted marketing campaigns in the state. *Id.* ¶ 7.

Accordingly, the Complaint does not make out a prima facie case of jurisdiction under the Georgia long-arm statute. And iDENTIFY's evidence shows that DataSeers will not be able to do so either.

4. *Due Process: iDENTIFY lacks the "minimum contacts" necessary to satisfy due process.*

Because DataSeers cannot satisfy any prong of Georgia's long-arm statute, the Court need not reach the due process question. *Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 829 (11th Cir. 2012); *Serveco*, 2023 WL 2583275, at *2 ("Only if the Court finds a prima facie case will it consider the

parties' affidavits."). But even if it did, the Complaint's allegations fall far short of establishing the "minimum contacts" necessary under due process for many of the same reasons.[2]

Due process requires, *inter alia*, that "a defendant maintain minimum contacts with the forum state." *nTier Training, LLC, v. Aragon*, No. 2:24-cv-235-RWS, 2025 WL 3255030, at *8 (N.D. Ga. Mar. 12, 2025) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). To have "minimum contacts," a defendant's contact with the forum state must satisfy three criteria. *Serveco*, 2023 WL 2583275, at *4 (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996)). First, the contact must be "related to the plaintiff's cause of action or have given rise to it." *Id.* Second, the contact must "involve some purposeful availment to the privilege of conducting activities within the forum." *Id.* And finally, the contact must be such that the defendant "should reasonably anticipate being haled into court" in the forum. *Id.*

Here, DataSeers fails to satisfy any of the three criteria. First, DataSeers fails to show any contacts between iDENTIFY and Georgia related to the cause(s) of action. As discussed above, the Complaint does not allege that iDENTIFY received any trade secrets, developed any product, or made any statements *in Georgia*.

---

[2] The Complaint does not "come anywhere close to establishing general jurisdiction," so this motion does not address that basis. *See Quashie*, 315 F. Supp. 3d at 1336.

Indeed, because neither Defendant is in Georgia, it is reasonable to conclude that the alleged conduct occurred outside Georgia.

Second, iDENTIFY has not purposefully availed itself of the privilege of conducting business in Georgia. iDENTIFY is not registered to do business in Georgia, has no Georgia customers, derives no revenue from Georgia, and does not target the Georgia market. Easton Decl. ¶¶ 4, 6–7. Indeed, apart from a single employee (*id.* ¶ 4), iDENTIFY's only connection to Georgia is this litigation. But as the Supreme Court made clear in *Walden v. Fiore*, "the plaintiff cannot be the only link between the defendant and the forum. 571 U.S. 277, 285 (2014). And because iDENTIFY's Georgia employee "has not performed any development work, and the clients he supports are not located in Georgia," Easton Decl. ¶ 4, his mere presence is not enough to satisfy due process. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 256 (2017) (noting that in the absence of an act "affiliat[ed]" with the "underlying controversy" that takes place within the forum state, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State") (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 930 n.6 (2011) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.")).

Finally, exercising jurisdiction would be unreasonable because iDENTIFY has no contacts with Georgia relevant to this litigation. It would offend traditional notions of fair play and substantial justice to force iDENTIFY—an Oklahoma company—to litigate in Georgia solely because DataSeers chose this forum, particularly when the center of gravity for the alleged tortious conduct is outside of Georgia. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (stating that jurisdiction is improper where it results from "random, fortuitous, or attenuated" contacts or the "unilateral activity of another party" (cleaned up)).

For these reasons, DataSeers has not met its burden to show that this Court may exercise personal jurisdiction over iDENTIFY, and the Complaint must therefore be dismissed under Rule 12(b)(2).

## IV. COUNTS II AND IV SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The gravamen of the Complaint against iDENTIFY is that it misappropriated Plaintiff's trade secrets in violation of federal and state trade secret laws. *See* Complaint ¶¶ 11–15; *see also id.* ¶¶ 19–24 (Count I). Plaintiff also alleges, "on information and belief," that iDENTIFY "has been telling Plaintiff's clients and other financial institutions that could reasonably become Plaintiff's clients not to work with Plaintiff because Plaintiff's products do not work and [iDENTIFY] can provide a better service." *Id.* ¶¶ 16.

In Count II, Plaintiff alleges that these actions, together, make iDENTIFY liable for "unfair and deceptive trade practices" under two Georgia statutes. *Id.* ¶¶ 26–27. In Count IV, Plaintiff alleges that telling others that Plaintiff's products don't work and iDENTIFY can provide better service also constitutes tortious interference with business relationships under Georgia law. *Id.* ¶¶ 37–38. Both Counts II and IV repeat the allegation about iDENTIFY's statements, although Plaintiff does not expressly include the "on information and belief" qualifier from the "Factual Allegations" section. *Compare id.* ¶ 16 (alleging "on information and belief")*, with id.* ¶¶ 26, 37 (omitting phrase). But each Count "repeats and realleges the allegations in [all] the preceding paragraphs," so the later identical allegations must be "on information and belief" as in the initial, incorporated allegation.[3]

These claims should be dismissed or narrowed based on several pleading issues. First, the Georgia Fair Business Practices Act ("GFBPA") alleged in Count II is a *consumer* protection statute inapplicable to the commercial parties and alleged conduct here. Second, Plaintiff's Count II theory under the Georgia Unfair and Deceptive Trade Practices Act ("GUDTPA") is preempted by the Georgia Trade Secrets Act ("GTSA") to the extent it is premised on trade secret

[3] The Eleventh Circuit has repeatedly condemned the (unfortunately common) practice of each count incorporating all preceding counts and allegations as a quintessential "shotgun pleading." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–22 & n.11, 1324 (11th Cir. 2015).

misappropriation. Next, the remaining allegations in Counts II and IV, made "on information and belief"—related to the purported statements by iDENTIFY—do not provide fair notice of the claim or raise a plausible right to relief. Last, to the extent Count II is not dismissed entirely, Plaintiff improperly seeks damages that are not available for a GUDTPA claim.

### A. GFBPA theory in Count II fails because the statute applies to the consumer market, not the commercial market.

Plaintiff claims "Defendants" (generally, without differentiation) engaged in "deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices … in violation of O.C.G.A. § 10-1-393(a)." Complaint ¶ 27. This claim is frivolous because the statute plainly does not apply to the alleged business conduct. The GFBPA applies only to "consumer transactions," which are defined to be the sale or purchase of goods or services "primarily for *personal, family, or household* purposes." O.C.G.A. §§ 10-1-393(a), -392(a)(10). The statute thus protects *consumers* against a "limited class" of conduct "within the consumer marketplace." *Chancellor v. Gateway Lincoln-Mercury, Inc.*, 233 Ga. App. 38, 43 (1998); *see also Eason Publ'ns, Inc. v. NationsBank of Ga.*, 217 Ga. App. 726, 730 (1995) (concluding practice relating to "commercial checking accounts [that] were not offered to consumers" was outside the scope of FBPA); *Larson v. Tandy Corp.*, 187 Ga. App. 893, 896 (1988) ("The legislature intended to limit the scope of the Act to the consumer market.").

The alleged conduct at issue are commercial, business-to-business transactions outside the consumer marketplace. Plaintiff alleges it "is a SaaS company that works with *banks, fintechs, and payment providers* to provide innovative solutions to their *operational* challenges." Complaint ¶ 7. Plaintiff's product, which embodies the alleged trade secrets, is a "data solution" used by "financial institutions" such as Defendant Sutton Bank. *Id.* ¶¶ 8–11. Plaintiff alleges iDENTIFY is engaged in a "copycat business" and directed allegedly tortious solicitations to "Plaintiff's clients *and other financial institutions*." *Id.* ¶¶ 16, 22. The market for operational software used by banks, fintechs, and financial institutions is plainly covered by the GFBPA, so this claim must be dismissed.

### B. Georgia Trade Secrets Act preempts Count II to the extent it relies on trade secret misappropriation.

"The GTSA supersedes all conflicting tort, restitutionary, and other laws providing for civil remedies for misappropriation of a trade secret. O.C.G.A. § 10-1-767(a). The "GTSA preempts claims that rely on the same allegations as those underlying the Plaintiff's claim for misappropriation of a trade secret." *Robbins v. Supermarket Equip. Sales, LLC*, 290 Ga. 462, 466 (2012) (quotation omitted). The "key inquiry is whether the same factual allegations of misappropriation are being used to obtain relief outside the GTSA." *Id.* at 466–67.

Plaintiff's Count II cites two actions as the basis for liability under two Georgia Statutes: (1) "Defendants *stole Plaintiff's Trade Secrets* to create their Infringing product," and (2) iDENTIFY "has been telling" others "not to work with Plaintiff" because its "products do not work and [iDENTIFY] can provide a better service." Complaint ¶ 26. The first allegation of Count II—that the defendants "stole" trade secrets—plainly relies on the same factual allegations of trade secret misappropriation alleged in Count I.[4] The GTSA bars such "'lesser and alternate' claims based on the same facts," so Count II must be dismissed to the extent it involves misappropriation of trade secrets. *Angel Oak Mortg. Sols. LLC v. Mastronardi*, 593 F. Supp. 3d 1234, 1241, 1245 (N.D. Ga. 2022) (Brown, J.) (quoting *Robbins*, 290 Ga. at 465) (dismissing certain Counts of the complaint "to the extent they involve allegedly misappropriated information the complaint identifies as trade secrets or information it declines to characterize as non-trade secrets").

**C. Counts II and IV do not sufficiently plead allegations that raise a right to relief.**

After removing the trade secret misappropriation component of Count II, the *only* remaining factual allegations for both Count II (GUDPTA) and Count IV (tortious interference) are that iDENTIFY "has been telling" Plaintiff's clients and

[4] As noted above, Count I is actually *incorporated* into Count II. See Complaint ¶ 25.

potential clients "not to work with Plaintiff because Plaintiff's products do not work and [iDENTIFY] can provide a better service." Complaint ¶¶ 26, 37.[5]

As an initial matter, Plaintiff's Count II contends these statements are "deceptive trade practices in violation of O.C.G.A. § 10-1-372(a)" without identifying *which* of the twelve practices in that statute were violated. Some courts have concluded that alleging only a "citation to the UDTPA" without specifying the code section does not sufficiently state a claim. *Mitchell v. Litton Loan Servicing*, No. 1:10-cv-3176-JEC-RGV, 2011 WL 13319002, at *13 (N.D. Ga. Mar. 3, 2011) (Vineyard, Mag. J.) (citing *Hernandez Auto Painting & Body Works, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 4:08-cv-00256, 2009 WL 2952066, at *4 (S.D. Ga. Sept. 14, 2009) (dismissing GUDTPA claim)), *report and recommendation adopted* 2011 WL 13319035 (N.D. Ga. June 13, 2011). *See also Hampson v. Am. Mortg. Exch., Inc.*, No. 1:10-cv-0430-JEC-RGV, 2011 WL 13318764, at *8 (N.D. Ga. Jan. 21, 2011) (same); *Morton v. Suntrust Mortg., Inc.*, No. 1:10-cv-2594-TWT-RGV, 2010 WL 5055822, at *7 (N.D. Ga. Nov. 5, 2010), *report and recommendation adopted* 2010 WL 5055813 (N.D. Ga. Dec. 6, 2010).

---

[5] Both Counts also contain conclusory legal assertions and "formulaic recitation[s] of elements" (Complaint ¶¶ 27–28, 38–40) that are disregarded in a motion to dismiss. *Britt v. Durham*, 770 F. Supp. 3d 1390, 1396 (N.D. Ga. 2025) (quoting *Iqbal*, 556 U.S. at 678); *Smith v. City of Sumiton*, 578 F. App'x 933, 936 (11th Cir. 2014).

Regardless and without conceding that Count II is sufficiently pled, the closest applicable subsection of the statute prohibits disparaging another's goods, services, or business" by a "false or misleading representation of fact." O.C.G.A. § 10-1-372(a)(8). To establish a claim for tortious interference with business relations for Count IV, Plaintiff must show, among other things, that the defendant acted (1) "improperly and without privilege" and (2) "purposely and with malice with the intent to injure." *Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1340 (11th Cir. 2004). Georgia courts have recognized that such a "misrepresentation" is an improper action that can support a tortious interference claim. *Coloplast Corp. v. Am. Breast Care, L.P.*, 209 F. App'x 945, 946 (11th Cir. 2006).

1. *Opinion statement about quality of service is not actionable.*

First, the alleged statement by iDENTIFY that it "can provide a better service" is plainly an opinion, not a statement *of fact*. *See Elder v. Cardoso*, 205 Ga. App. 144, 144–45 (1992) (concluding statements about "relative abilities" of different service providers were "wholly subjective and not capable of proof" such that party was "entitled to express such opinions" (cleaned up)). Statements of opinion are not "actionable" under either the GUDTPA or as tortious interference. *See Earthcam, Inc. v. Oxblue Corp.*, No. 1:11-cv-02278-WSD, 2012 WL 12836518, at *5 (N.D. Ga. Mar. 26, 2012) (citing *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1311 (11th Cir. 2010)); *G&G TIC, LLC v. Alabama Controls, Inc.*,

324 F. App'x 795, 799 (11th Cir. 2009) ("[T]he expression of an opinion to dissuade someone from continuing in a business relationship, without more, does not give rise to an actionable claim for tortious interference."). So the statement about "better service" does not raise a plausible claim under either cause of action.

2. *Allegations on "information and belief" are not entitled to a presumption of truth.*

Next, Plaintiff's allegations about iDENTIFY's statements are pled only "on information and belief" without alleging any specific facts upon which the belief is reasonably based. Complaint ¶ 16. "[F]or purposes of a Rule 12(b)(6) motion to dismiss," the Court does "not have to take as true allegations based merely 'upon information and belief.'" *Smith v. City of Sumiton*, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) (quoting *Mann v. Palmer,* 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 551, 557)). Pleading on information and belief is permissible and can survive a motion to dismiss where "the facts are peculiarly within the possession and control of the defendant or *where the belief is based on factual information* that makes the inference of culpability plausible." *REPAY Mgmt. Servs. LLC v. Loscavio*, No. 1:24-cv-3927-SEG, 2025 WL 3268858, at *5 (N.D. Ga. Sept. 12, 2025) (cleaned up). But to meet the *Twombly* standard, the plaintiff must still "allege specific facts" to support its belief. *Price v. Howard*, No. 1:22-cv-02056-SDG, 2023 WL 2767770, at *2 (N.D. Ga. Mar. 31, 2023) (citing *Scott v.*

*Experian Info. Sols., Inc.*, No. 0:18-cv-60178-CMA, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018)).[6]

As discussed above, the *only* (permissible) factual support for both Counts II and IV are the allegations about what iDENTIFY "has been telling Plaintiff's clients and other financial institutions." Complaint ¶¶ 16, 26, 37. While Paragraphs 26 and 37 repeat the allegation without the "information and belief" qualifier, they cannot be transformed into well-pled allegations simply by omitting the phrase, which Plaintiff "repeats and realleges" from Paragraph 16 "as if fully set forth" in Counts II and IV. Complaint ¶¶ 29, 36. At first glance, what a defendant "has been telling" others might appear to be the kind of fact "peculiarly within the possession and control of the defendant" that would be permissible. But for Plaintiff's belief to be plausible—and to be considered as true—the Plaintiff must have specific facts within its own knowledge and control that would support its belief.

Here, there are *no additional facts* related to the alleged statements in the Complaint. It contains nothing more concrete about the statements or the basis of

---

[6] *See also GYN & Fertility Specialists, Inc. v. Saint Joseph's Hosp. of Atlanta, Inc.*, No. 1:22-cv-01753-TWT-WEJ, 2022 WL 22329423, at *3 n.5 (N.D. Ga. Nov. 18, 2022) (citing cases), *report and recommendation adopted* 2023 WL 9503386, at *1 (N.D. Ga. Jan. 9, 2023); *Joseph v. Bd. of Regents of Univ. Sys. of Georgia*, No. 1:20-cv-502-TCB, 2020 WL 6494202, at *6 (N.D. Ga. May 8, 2020) (crediting and considering allegations on information and belief when plaintiff otherwise "pleaded sufficient facts" for some claims but refusing to consider them when they are the "only allegations to support" a claim).

Plaintiff's belief. There is no allegation regarding to whom, when, or where the statements were made. Nor are there allegations detailing the specific content of the statements or how Plaintiff purportedly discovered them. "Standing alone," these allegations "lack particularity" such that there is no basis for the Court to consider them as true. *Cf. REPAY*, 2025 WL 3268858, at *5 (finding other, well-pled factual allegations of the complaint "build[] a basis" for the "information and belief" allegation). And without assuming Paragraphs 16, 26, and 37 to be true, there are no plausible allegations to support either Court II or IV. They should be dismissed.

*3. The statement(s) are not alleged to be false and do not provide notice of the basis for the claim.*

Even if the allegations are assumed to be true, Plaintiff does not allege that iDENTIFY's statement that Plaintiff's products "do not work" is, in fact, false, which is required under either Count. *Osmose*, 612 F.3d at 1308, 1311 ("When determining whether an advertisement is literally false or misleading, courts must analyze the message conveyed in full context, and must view the face of the statement in its entirety." (cleaned up)).[7] Instead, the Complaint merely makes conclusory assertions that the statement was "unlawful," both defendants "acted in bad faith," and Plaintiff was "harmed" or "damaged." Complaint ¶¶ 16–17, 26–28,

[7] And depending on the (unpled) context, this statement may also be non-actionable opinion, rather than a statement of fact.

37–40. Although the context and meaning of the alleged assertion that Plaintiff's products "do not work" is unclear, the Complaint draws no connection between the statement and the alleged misappropriation. That is, even if iDENTIFY misappropriated a trade secret, that does not make its statement about the quality of Plaintiff's product (a) "false or misleading" or deceptive under the GUDTPA or (b) an improper action or unauthorized interference to establish tortious interference.

Even assuming the Complaint's allegations are true, the statement could be *true* for various reasons, such as iDENTIFY learning the product "does not work" due to its access to Plaintiff's trade secrets or because iDENTIFY is repeating claims by Defendant Sutton Bank or some other party. Without any allegation as to actual statements made, by whom, to whom, about what aspect(s) of the product, or in what context, the Complaint does not provide "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up); *see also Osmose*, 612 F.3d at 1311). Accordingly, the Complaint fails to state a claim for relief in Counts II and IV.

**D. No damages are available for Count II under GUDTPA.**

Last, to whatever extent Count II survives, it improperly seeks "damages" under various statutes. See Compl ¶ 28. The *sole remedy* under the GUDTPA is injunctive relief; damages are not allowed. O.C.G.A. § 10-1-373(a); *Iler Grp., Inc. v. Discrete Wireless, Inc.*, 90 F. Supp. 3d 1329, 1342 (N.D. Ga. 2015) (citing

*Catrett v. Landmark Dodge, Inc.*, 253 Ga. App. 639, 644 (2002)). The other cited statutes in that paragraph also provide no additional remedy where damages are not allowed by the underlying claim. *Dowdell v. Krystal Co.*, 291 Ga. App. 469, 473 (2008) (noting attorney fees under § 13-6-11 and punitive damages under § 51-12-5.1 are only available as *additional* damages); *see also Junior v. Graham*, 313 Ga. 420, 425 (2022) (damages under § 13-6-11 are "compensatory").[8] Accordingly, Plaintiff's claim to any relief for Count II, beyond that identified in O.C.G.A. § 10-1-373, should be dismissed.

## V. COUNT I SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

The trade secret misappropriation claim of Count I should also be dismissed because it contains only naked assertions without plausibly identifying the trade secret or its misappropriation. "To state a claim under DTSA or GTSA, Plaintiff must first identify a plausible trade secret." *RoadSync, Inc. v. Relay Payments, Inc.*, No. 1:21-cv-3420-MLB, 2022 WL 4715656, at *2 (N.D. Ga. Sept. 30, 2022). While the trade secret doesn't need to "be disclosed in detail" in a complaint, a plaintiff still must "allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *Id.* (internal quotation marks omitted).

---

[8] As noted in Part IV.A above, no relief is available under O.C.G.A. § 10-1-399 because there can be no claim under the GFBPA.

The Complaint alleges that Plaintiff has a "suite of products" collectively marketed under the name "FinanSeer®" to "banks, fintechs, and payment providers." Complaint ¶ 7–8. Plaintiff flatly alleges it takes "extensive measures to safeguard the source code, architecture, technology, system workflows, database design, and data processing logic underlying" those products, and defines that entire list of categories as "the 'Trade Secrets.'" *Id.* ¶ 11. Merely setting out "broad categories of information" is not sufficient to "show a trade secret was involved" or "give the defendant notice of the material plaintiff claimed constituted a trade secret." *RoadSync*, 2022 WL 4715656, at *4 (cleaned up) (quoting *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016)). And while allegations of "source code" are sometimes found sufficient, such allegations must "fairly describe" what functionalities the source code provides. *Id.* at *3 (citing cases). The allegations here are far more vague. Rather than describing the functionality of the source code, the allegations merely conflate all "code" across multiple products, along with generalizations such as "architecture," "technology," and "system workflows." Because of this shotgun approach, Defendant iDENTIFY has no notice of the "Trade Secrets" at issue in this litigation. *See Card Isle Corp. v. Farid*, 689 F. Supp. 3d 1273, 1289 (N.D. Ga. 2023) ("A plaintiff asserting a combination trade secret over highly complex technical information cannot merely offer lists of broad technical concepts identifying categories of information without

showing which information contained within those categories constituted a trade secret." (cleaned up) (quoting *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 381 (6th Cir. 2022))).

Nor does the Complaint plausibly allege misappropriation of those broad categories. The closest it comes is alleging that, on "information and belief, Defendants had the opportunity to access and dissect [the] FinanSeer® Products and designs" and to "steal" the trade secrets based on Sutton Bank's status as a customer. Comp. ¶ 15. As noted above, an allegation made on information and belief, without providing the factual basis for that belief, need not be accepted as true. See Part IV.C.2 above. Plaintiff does not allege that access to these (general) "Products" includes access to the source code, much less access to the other broad categories of trade secrets it claims as its trade secrets supposedly at issue. And it is *implausible* that Plaintiff would provide its "Saas" (Complaint ¶ 2) solution to one of its remote customers (Sutton Bank) without knowing *precisely* what access it had provided to its source code and other trade secrets.[9] Nor does the complaint allege that iDENTIFY either knew or had a reason to know these generic "trade

---

[9] For reference, "Software as a service (SaaS) is a cloud-based software delivery model in which providers host applications and make them available to users over the internet. SaaS users typically access applications by using a web browser or app." IBM, *What is Software As a Service*, https://www.ibm.com/think/topics/saas (visited Dec. 17, 2025); *see also* Salesforce, *What is Saas (Software as a Service)?*, https://www.salesforce.com/saas (visited Dec. 17, 2025).

secrets" were acquired by any "improper means." *RoadSync*, 2022 WL 4715656, at *5 (citing statutory definitions). In fact, Plaintiff's allegation that iDENTIFY "admit[ed] that its developer 'accidentally' copied Plaintiff's source code" (Complaint ¶ 14) suggests (if true) that iDENTIFY did not *know* the information was a trade secret or that it was *used*.[10]

In sum, the threadbare allegations do not provide iDENTIFY notice of the trade secrets at issue, what was misappropriated, or how. These "formulaic recitation of the elements" of a trade secret claim are insufficient to state a claim. *Iqbal*, 556 U.S., at 678. The Court should therefore dismiss Plaintiff's attempt to "unlock the doors of discovery … armed with nothing more than conclusions." *Iqbal*, 556 U.S., at 678–79.

## VI. CONCLUSION

The Complaint should be dismissed because this Court lacks personal jurisdiction over iDENTIFY and the Complaint fails to state a claim for relief, as explained above.

[10] Counsel for iDENTIFY asked Plaintiff's counsel to voluntarily identify the source of this alleged statement or evidence of misappropriation, but Plaintiff declined.

*/s/ Warren J. Thomas*

Warren J. Thomas (Ga. Bar No. 164714)
John W. Harbin (Ga. Bar No. 324130)
Samuel V.B. Fritz (*pro hac vice* to be filed)
**Meunier Carlin & Curfman LLC**
999 Peachtree Street NE
Suite 1300
Atlanta, GA 30309
Tel: 404-645-7700
wthomas@mcciplaw.com
jharbin@mcciplaw.com
sfritz@mcciplaw.com

*Attorneys for Defendant GOiDENTIFY, LLC*

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1(D), I certify that this brief has been prepared with one of the fonts and point selections approved by the Court in LR 5.1.

*/s/ Warren J. Thomas*
Warren J. Thomas